Good morning, Your Honors. Michael Shipley for Petitioner Gregory Sturm. I'd like to reserve four minutes for rebuttal. Please watch the clock. Certainly. This case is about the California Supreme Court's premature summary dismissal of my client's habeas petition without providing him with any ability to develop the record. This case has been going on a while. My client was convicted of a triple homicide in 1992. He received, on his first capital jury, the jury hung. I think it was 10-2 in favor of life. Subsequently, he was convicted by a capital jury. And then in 2000, in his trial, his trial counsel contested effectively only the penalty phase. He more or less conceded guilt. And then in appeal, again, the appellate counsel only contested the capital sentence and not the underlying guilt. The California Supreme Court in 2000 held that the trial judge had committed misconduct in making a number of inappropriate statements during the sentencing phase of the case. I think we got the procedural history of the case. Why don't you just dive in? Are you going to start with competency or do you want to start with the... Let's start with competency because I think that... Can I take something before competency? Because if I'm understanding the argument, the framework for AEDPA purposes, is your argument is that the state court made an unreasonable determination of the facts. So you're arguing there's a 2254 D2 error. Is that your position? I think it's hard to tell, Your Honor, because under, as I've said, under Harrington, right, we have to put our... There's no reason decision on habeas in this case. So we have to put ourselves in the shoes of the California Supreme Court. Well, there's a decision. The California State Court, the Supreme Court made a decision. They projected the appeal and the various claims your client made. And so the question is, are we reviewing that de novo or are we reviewing that with AEDPA deference? So your argument seemed to be focused on the California Supreme Court erred in not having an evidentiary hearing, which I'm taking as a 2254 D2 argument. Otherwise, we're just in regular AEDPA deference review. So help me understand what the framework is that we're looking at this case through. Sure. Your Honor, the issue here is that the California Supreme Court dismissed in a summary dismissal under its... The case on the merits. On its Duvall standard. Because under Harrington v. Richter, we say that's adjudication on the merits. And I agree that that is an adjudication on the merits. The problem is we don't know what form that adjudication took from the court's order. So I think one of three things... That doesn't matter under Harrington v. Richter, right? Well, it does matter as to whether it's a D1 claim or a D2 claim. Well, that's the AEDPA framework. So what argument are you making? Are you saying that they made an unreasonable application of Supreme Court precedent? Or are you saying that they also made an unreasonable determination of the facts? I'm saying that based on the record that was presented to the California Supreme Court, they did one of those two things. And we can't tell which one it was, but we know it was one of the two. Because based on the record that was presented to the California Supreme Court, there was, in fact, a prima facie case of both trial counsel's ineffective assistance in raising the competency issue, as well as in his actual competency. And whether... D1 case, which would be, is it an unreasonable application of Supreme Court precedent for each of these claims? But if you're arguing that the Supreme Court also made an unreasonable determination of the facts for failure to hold an evidentiary hearing, then I'd like you to address Boyd. Under Hibbler, we said we use the same standard as a... Or we may use the same standard for whether the district court erred in having an evidentiary hearing. And then we have this decision, Boyd, which is fairly strong about a district court. So we would assume a state court can reasonably reject this sort of retrospective declaration, which is mostly what was in the file, the 2004 statements. So, Your Honor, there's a few pieces of that, and I'd like to address all of them. All right. Let's talk a little bit about the facts, because I think that's... The record before, there wasn't just retrospective declarations of mental health examiners. There were certainly several of those in there, and those are not... While they might be something that might be viewed with some level of skepticism, they certainly weren't the only part of the record. I mean, in this case, you had trial counsel's declaration that he did not seek a competency evaluation, even though he believed that his client was effectively decompensating during trial. That's corroborated by his investigator's declaration that says basically the same thing. That's corroborated by the registered nurse who viewed Mr. Sturm throughout the entire trial period, who said effectively she... I think she said she met with him 45 times, and she believed that he was effectively decompensating and unable to participate in his trial. Well, we've said even schizophrenic delusions are okay as long as they meet the capacity, they have the sufficient present ability to consult with the lawyer with a reasonable degree of rational understanding. We said as long as the schizophrenic delusions don't affect his ability to talk to his lawyer, it doesn't matter. Was there anything in the record that expressly indicated that he lacked the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding? I mean, his own lawyer's declaration essentially made that conclusion. What are you specifically citing to me? Sure. I believe it's tab 15 of the excerpts. What's the ER? It starts at... His declaration, I believe, starts at 926. And what language are you referring to? I'm sorry, let me... I mean, at paragraph 25 of his declaration, which is at EXP 934, he says, as with the first trial, Mr. Sturm was not capable of being assistance to me in my presentation of the case. Okay. So that's what you're relying on? I mean, I think there's a greater degree of factual support behind that in the beginning at paragraph 23 and continuing through 24 and 25 that back that up. And again, I think that is bolstered by the declaration of the investigator who assisted trial counsel, who says basically the same thing, as well as the registered nurse who was in the jail. And counsel does admit that he reviewed the jail's psychiatric record. So he was aware of these facts. So, you know, again, we're dealing with a situation where the Supreme Court dismissed or denied the petition on a cold record where there wasn't any ability to make actual factual findings or to develop the evidence. And under these circumstances, I think there's enough there from which a reasonable fact finder could have, you know, crediting the evidence that my client put forward in his petition, could have come to the conclusion that trial counsel was ineffective or failing at least to ask the court to have a competency here. Mr. Shipley, did counsel have Mr. Sturm examined by mental health professionals at the time of the trial? He did, but not directly on the issue of his competency. Well, whatever. He had, was it more than one mental health professional see Mr. Sturm? I believe so, Your Honor. And we have nothing from those professionals in the record to support that this guy was incompetent at the time? Actually, there are declarations from several of the mental health professionals that saw him in the record. For instance... Do they opine that he was incompetent? They do not, I believe the people who saw him, the mental health professionals who saw him at the time of trial do not opine that he was incompetent because they weren't asked to. And trial counsel specifically says that he did not seek an opinion on that issue. What were they? Just for example, Dr. Fisher. I don't remember if it's a he or she. What was that doctor asked to do in evaluating Mr. Sturm? Because if I recall, that doctor ended up not suggesting that he needed to be evaluated for competency, right? I think that is... I mean, Dr. Fisher did opine that Mr. Sturm was likely to decompensate in the face of stressors. So again, there's evidence there that would be enough to at least make trial counsel believe that there's a reasonable basis to believe that his competency should actually be examined qua competency, not just for the other mental health... It was a capital case, so obviously there's a number of mental health issues that are in play. And if you read the declaration of trial counsel, he was very, very, very focused on saving his client from the death penalty. And so his investigation, his hiring of experts, was all devoted to that end. And if you look at the declarations of the people he hired, they were certainly looking to that issue as well as... To some degree, the mild issue that was presented on the guilt phase of the trial was, did he have the mental wherewithal to actually satisfy the first-degree murder standard and then the special circumstances that were charged. So... Excuse me, finish your answer. I'm sorry, we've got a little delay. I didn't mean to cut off your answer. I'm sorry. Judge Watford. Go ahead, Judge Sullivan. If we were to agree with you, could you tell me precisely what relief you're looking for here? What do you want us to do? I think you would remand to the district court who would then, because the California Supreme Court didn't order an evidentiary hearing, and therefore, either applied the wrong standard or failed to make an unreasonable determination of law by applying an insufficient process, the district court then, EDPA will have been satisfied and the district court should order an evidentiary hearing and then review the merits of the petition de novo. I see I'm out of time for my reserved rebuttal. I'll sit down unless there's anything else. All right. Thank you. Thank you, Your Honor. Good morning, Your Honors. May it please the court, Christopher Beasley, Deputy Attorney General, on behalf of the respondent. Under AEDPA, like you pointed out, Judge Ikuta, we're looking at whether the determination of the California Supreme Court was an unreasonable application of Supreme Court authority under D-1 or amounted to an unreasonable determination of the facts under D-2. We have neither here. We do not have an unreasonable application of controlling U.S. Supreme Court authority, and we also do not have an unreasonable determination of the facts. Yes, this record is replete with a lot of declarations and a lot of exhibits. It is also replete with a lot of evidence from the trial court record. And the Supreme Court, in state habeas review, does not engage in fact-finding. It takes the factual allegations as presented, presuming them to be true, and then weighs that corpus of material that's presented in the habeas petition with the material that's in the trial court record to determine has there been here a prima facie showing that would entitle the petitioner to relief. Under that standard, there is nothing here that would satisfy that burden. There is no evidence on this record that amounts to facts that this petitioner was incompetent. We have declarations and opinions, retrospective declarations and opinions, where various different people opine that the defendant may have had emotional trauma, may have suffered from post-traumatic stress disorder, and various other emotional problems. We also... but those are just opinions. Opinions do not amount to fact. We also have here a record showing a defendant who testified in his own proceedings in the suppression motion to suppress the confession. A defendant who was able to testify and aid in his defense in an effort to suppress that confession so that it would not come into the trial court, so that the defense could then pursue a third-party culpability defense. Throughout that proceeding, the defendant presents and answers questions in a reasonable and rational manner, showing his complete understanding of what was happening. You know, that may all well be true, but wouldn't you say that the strongest point, point of reference, I guess, in terms of the chronology for the petitioner here, is the point in the trial where he ended up sending that letter to the judge, right? And if I remember, the reason it occurred then was that the video of his reenactment was being played or his confession. So that apparently was the thing that just kind of broke him, for lack of a better word. And it seems to me that's the point in time at which the case for, whoa, maybe we need to take a break and get this person evaluated for competency, that seems to me the strongest point in time. I agree with you, not earlier during the pretrial proceedings, but it seemed like the stressor, as your opponent used the term, of his being in court and hearing, you know, his reenactment and all that, that seemed to be what really kind of... The straw that broke the camel's back. Yeah, and so maybe you could address kind of at that point why, given all the other signs that your opponent alluded to, why at that point shouldn't there have there been a competency determination? Because the letter itself demonstrates his awareness of the proceedings that were happening. His letter to the court showed that he understood what was happening. There was a video being played of the reenactment. He understood that he was facing the family members of the victims. He understood the pain. He was feeling the palpable pain and the anguish of the guilt that he was experiencing. And in the letter asks the court for a continuance of the proceedings so that he can perhaps consult with another attorney. He wants to plead guilty so that he can eviscerate... clear his conscience, in a sense, so that he can stop this proceeding. He wants to plead guilty and his attorney doesn't want to plead him guilty to a death penalty case, understandably. But he then asks the court, maybe I should see a separate attorney to get additional advice. The content of the letter itself, Judge Watford, points out his awareness of the proceedings, his understanding of what was going on and what he needed to do in so far as talking to an attorney to see what his legal remedies or options were. At that point, the court then did suspend... didn't suspend proceedings. There was a planned five-day continuance anyway. There was a recess of five days. And the court suggested to counsel, why don't you talk to your higher-ups in the public defender's office to determine how to proceed and talk some more with your client. So then there were additional conversations that needed to have taken place with the petitioner and there was never any indication beyond that, that petitioner failed to understand and comprehend what was going on. As the Supreme Court has said, the trial counsel is in the best position to be able to determine whether his client understands what's going on. And in the contemporaneous moment when counsel is able to confer with his client multiple times, and in his later declarations, 12 years later, confirms that he spoke with his client multiple times, it shows that here was an attorney who had a vested interest in his client's well-being and he would have been able to see he doesn't get what's going on and he cannot be of assistance. But he never raised such a claim in the trial court. That's the best evidence that this man truly was competent and understood, notwithstanding the emotional grief that he was going through. But we obviously have his declaration now, and I grant you it's many years later, but he is saying that, at least if you were saying the California Supreme Court basically had to credit this as true, that he would testify to this if called at an evidentiary hearing, and he says now that the guy was just a total wreck and he was not able to assist me. You know, he sort of justifies his non-action as, well, I didn't need his help for the guilt phase because we weren't going to contest that, and I was just hoping I could hold him together for the penalty phase so the jury wouldn't see him as a monster. But he definitely paints the picture of someone who, maybe he was aware of what was going on, but wasn't able to effectively assist counsel in his defense. And yet, in the very next paragraph in that declaration, counsel goes on to talk about how acquiescent and how compliant his client was and that suggests then that his client really was listening to his attorney and really did understand what was going on and could actively assist by being compliant, by acquiescing, by following whatever counsel's instructions were. Part of what counsel's instructions were was, we need to make sure that you present well to the jury, that you don't fall apart emotionally before the jury, that you don't come across as unremorseful, that you don't come across as cold and unrepentant, especially in a penalty phase type of trial, and there is no indication that petitioner failed to follow those instructions. In fact, the very declaration 12 years later, counsel points out he was acquiescent, he was compliant, he followed what counsel asked him to do and thus was able to assist in the defense. So, yes, you have the one sentence where he suggests he couldn't assist me in the defense, but in the very next paragraph makes other statements suggesting that he could assist in the defense. And so, taking all of that together, together with the trial record and what actually happened at the time, together with the corpus of contemporaneous mental health professionals, Judge Silverman pointed out that there were many people who evaluated this defendant at the time, and not one of them suggested that he was he raised those red flags or bells suggesting this is a man who needs to be evaluated for competency. And there is a procedure that would have been very much readily available that simply was not followed because there would have been no merit to following that procedure. Trial counsel cannot be ineffective for failing to raise an unmeritorious objection or claim. Unless the court has other questions for the at this time. Thank you, Your Honors. Thank you, Your Honors. I think counsel's able presentation I think illustrates the issue we're talking about here is that there's evidence here that can be argued. You can argue that Mr. Sturm's approach and letter during his guilt phase after seeing the video reenactment was a calculated moral decision that he wanted to make. You can argue the other way and frankly his own attorney argues the other way that it caused him to basically melt down. And I think that's effectively what we're getting at here is that these are not decisions that can be made on a cold record. The California Supreme Court crediting what it was supposed to have been, what it says it does when it looks at these things is it takes the petitioner's evidence and accepts it as true. Can I just stop you there? Because when you say accepts it as true isn't it just that we're gonna credit that this person who submitted this declaration to us would, if called as a witness at an evidentiary hearing, provide testimony consistent with what they've said there, right? You don't have to credit it as true in the sense that we have to believe that you know, their let's just say the opinion of the psychologists who evaluate him after the fact and who are now saying that he must have been incompetent at the time. The California Supreme Court doesn't have to credit that opinion as true, right? I mean, I think it to me, it's effectively like a judgment of the matter as a matter of law issue, right? You take the evidence and you look at the evidence and you say based on the evidence, can a reasonable fact finder say there's enough evidence here that we have to look at, we have to get through the petition and get to the merits? Well, isn't it rather I mean, for purposes of deciding whether to hold an evidentiary hearing, you have to decide are there material factual disputes that we actually need to flesh out and, you know, decide who's right? Here, it seems to me that what the California Supreme Court no doubt did was say, okay, fine, we'll accept as true that these experts who've evaluated him after the fact would come in and provide these opinions but of course we have to weigh that against the evidence that existed in terms of the trial record and looking at all of that together why under evidence wouldn't the California Supreme Court be reasonable in saying, no, this doesn't make out a viable claim? Your Honor, I think the issue there is the word weigh because I think that the standard being a prima facie standard doesn't imply weighing. It implies assessing evidence to define if there's a sufficient quanta if credited inferences are drawn in the way they're supposed to be drawn to proceed. So, you know, can you have Yeah, but let me just give you a hypothetical. Let's say that we had five declarations from psychologists contemporaneously with the trial who said, the guy's totally competent. That's what you had. And then you had five declarations from people like you have now after the fact ten years later who say, no, no, no I've looked at this evidence and my opinion is that he was definitely incompetent back then. You present that record to the California Supreme Court I don't think it has to hold an evidentiary hearing on that, right? It could just say, you know what given this record, even if we believe that these experts, the after the fact experts would testify consistently with their declarations, that's just not enough because there's such strong evidence that at the time people evaluated him and found he was competent. I think that would be a very hard question, Your Honor. I don't think that's the question here. I think part of the problem is there are no contemporaneous opinions that he was in fact competent. I mean, there's I'm sorry Okay. There's a case called I'm sorry There's a case called Deere v. Woodford, which is a Ninth Circuit case that addresses a very similar situation here where effectively I believe it is cited in There's actually two Deere opinions. There's an initial Deere opinion where the evidence is in conflict and the court says there's different declarations. Like this case, the defendant actually asked to plead guilty and there's a lot of conflicting evidence and the court says based on this conflict we need to have more fact finding to figure out what's going on and remand the trial court. Ultimately there's an extensive evidentiary record. The case goes up on appeal again and the court finds no the defendant was actually ultimately competent. And that you know, I'm not saying that's never going to happen here. I just think we're not there yet. Thank you for your time. Thank you. The case of Serenity Cate is submitted.
judges: Silverman, Ikuta, Watford